UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA ALEXIS SIMS,

    Plaintiff,

v.                                       Case No. 8:25-cv-2451-WFJ-TGW

TARGET CORPORATION,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Target Corporation's Motion to Dismiss (Dkt. 20), Plaintiff's response (Dkt. 23), and Defendant's Reply (Dkt. 28). Plaintiff then filed a Motion for Equitable Tolling of the applicable limitations periods (Dkt. 30), and Defendant responded (Dkt. 34). After careful consideration of the allegations of the Amended Complaint (Dkt. 13), the submissions of the parties, and the entire file, the Court concludes the motion to dismiss is due to be granted.

## BACKGROUND

Plaintiff Victoria Alexis Sims, proceeding *pro se*, brings this employment discrimination action against her former employer, Target Corporation ("Target"), for pregnancy discrimination, retaliation, and wrongful termination. Although the factual allegations are set forth in numbered paragraphs, the Amended Complaint lists five counts under "Causes of Action" without reference to any facts: (1)

discrimination under the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), and Florida's Pregnancy Discrimination Act under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10; (2) retaliation under Florida's private Whistle-blower's Act ("FWA"), Fla. Stat. §§ 448.101–105; (3) both interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (4) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and (5) state law "negligence in maintaining proper chain of command and policy enforcement." Dkt. 13 at 3.

**Incidents leading up to termination**

The Amended Complaint alleges the following facts. Plaintiff Sims was working for Target in 2022 when she "experienced unwanted touching" by a team leader. Dkt. 13 ¶ 1. She reported the incident on the same day, October 16, 2022. *Id.* ¶ 2. Plaintiff asserts that the human resources ("HR") contact asked, "What do you want me to do, fire him?" *Id.* On October 19, Plaintiff reported both the incident and the HR comment to the Target hotline. *Id.* ¶ 3.

Nonetheless, Ms. Sims was scheduled to continue work in the harasser's department. *Id.* ¶ 4. As a result, Plaintiff alleges that she became ill and overwhelmed and could not complete a work shift with the harasser present. *Id.* On October 26, Plaintiff spoke with HR again, and HR suggested that she take leave. *Id.* ¶ 5. Plaintiff asserts that "without her consent," HR placed her on a two-

2

week "Employee Health Condition" leave through November 15, 2022. *Id.* She adds that during this time, the store director was suspended and ultimately terminated, which constituted a "breakdown in the chain of command." *Id.* ¶ 6.

On March 7, 2023, Ms. Sims was seven months pregnant, diagnosed with hyperemesis gravidarum, and considered a high-risk pregnancy. *Id.* ¶ 7. Hyperemesis gravidarum is "a debilitating and high-risk condition recognized under both the FMLA and ADA." Dkt. 30 at 2. Plaintiff's obstetrician submitted FMLA paperwork recommending leave from March 16 through August 20, 2023. Dkt. 13 ¶ 8. On April 3, Target terminated Plaintiff, who was eight months pregnant. *Id.* ¶ 9.

**Post-termination**

Ms. Sims gave birth on May 21, but claims she "was denied formal maternity leave and postpartum recovery time." *Id.* ¶ 11. After childbirth, Plaintiff "was diagnosed with severe postpartum depression and anxiety disorders, which persisted for over a year beyond the EEOC filing deadline." Dkt. 30 at 2. During this time, Ms. Sims served as the "sole provider and caregiver for her two children, including a disabled child who continues to require ongoing therapy and specialized medical care." *Id.*

Over two years later, on August 4, 2025, Plaintiff contacted the EEOC's Miami district office "to initiate an administrative charge" and requested

"equitable tolling" because she was unaware of her rights and "the 300-day deadline." Dkt. 13 ¶ 12, Exh. A. Plaintiff's written inquiry provides:

> I am filing this statement to report pregnancy-related discrimination, harassment, retaliation, and wrongful termination by [Target].
>
> In or around October 2022, I was subjected to unwanted physical contact by a store manager [and] reported the incident to Human Resources [and HR] failed to take appropriate disciplinary action and instead asked me what I wanted her to do about it. She then suggested that I take a leave of absence, which I did not initiate or request. At that time, I was emotionally overwhelmed and unaware that I was pregnant.
>
> I was later diagnosed with hyperemesis gravidarum, a serious pregnancy-related condition. My HR representative submitted an FMLA request on my behalf without informing me, and months later, I was notified that my leave was denied and that I was terminated. I had no opportunity to correct or appeal the decision, and I was emotionally and physically unwell throughout this period. I was never contacted about unemployment benefits or given a chance to return to work. Meanwhile, the manager who harassed me was allowed to keep his job.
>
> I am respectfully requesting equitable tolling for this EEOC complaint. I was unaware of my rights and the 300-day deadline. I was extremely sick during my pregnancy and emotionally traumatized by the treatment I received. These circumstances made it impossible for me to take legal action sooner.

Dkt. 13 at 7–8 (Exh. A).

On August 7, Ms. Sims spoke with a Target relations representative "for 56 minutes regarding the non-consensual leave." Dkt. 13 ¶ 13. After receiving her personnel file on August 11, Plaintiff states that it confirms "a false leave was filed without medical documentation." *Id.* ¶ 14. That same day, she filed a lawsuit in the Fifth Judicial Circuit Court of Hernando County, Florida. Dkt. 1-1.

4

A month after she filed the lawsuit, Plaintiff received a response from the EEOC. Dkt. 13 ¶ 17, at 10–11 (Exh. B). Her claim was found untimely:

> Based on information in your e-mail, any alleged discriminatory actions taken against you by your former employer is untimely and would therefore be considered untimely by our procedures.
>
> If you are interested in proceeding with your claim in federal court, despite the untimeliness of your allegations, you may send a request in writing and submit it to us for processing. It will be immediately dismissed, and you will be issued a Notice of Right to Sue.

*Id.* at 10. Plaintiff requested her Notice of Right to Sue letter on September 17, 2025. Dkt. 13 ¶ 19, at 12.

Defendant timely removed the state court action to this Court on September 11 and moved to dismiss the complaint. Dkts. 1, 9. Plaintiff filed the Amended Complaint as a matter of course. Dkts. 13, 14. Defendant moves again to dismiss and raises failure to exhaust administrative remedies as to the Title VII, ADA, and FCRA claims. Defendant asserts both the FMLA and Florida whistle-blower claims are time-barred under the applicable statutes of limitations. As to the state law negligence claim, Defendant argues it is not legally cognizable under either Florida or federal law. Plaintiff raises equitable tolling as to all limitations periods.

## LEGAL STANDARD

A complaint survives dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

5

U.S. 544, 570 (2007)). The factual allegations need not be detailed, but the plaintiff is still required to provide more than mere labels or conclusions, and the facts must plausibly lay the grounds for an entitlement to relief. *Twombly*, 550 U.S. at 555. The court must accept the facts, not conclusions, as true and view them in the light most favorable to the nonmoving party. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although *pro se* pleadings must be liberally construed, the court may not act as *de facto* counsel or rewrite a deficient pleading to sustain an action. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*.

Both statute of limitations and administrative exhaustion issues may be raised in a motion to dismiss under Rule 12(b)(6). *Dory v. United Airlines*, No. 6:22-cv-1496-WWB-DCI, 2023 WL 5925703, at *1 (M.D. Fla. Aug. 2, 2023). A motion to dismiss may raise the expiration of a statute of limitations as an affirmative defense where the complaint shows on its face that the limitations period has run. *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982). Generally, only the four corners of the complaint and any exhibits attached are considered on a 12(b)(6) motion to dismiss for failure to state a claim. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023); *Parke v. Delta Air*

*Lines, Inc.*, No. 6:23-cv-2221-JSS-UAM, 2025 WL 487806, at *2 (M.D. Fla. Feb. 13, 2025) (citing same).

Although not mentioned in Rule 12(b), failure to exhaust administrative remedies should be raised in a motion to dismiss so long as the resolution does not require adjudication on the merits of the underlying claim. *Bryant v. Rich*, 530 F.3d 1368, 1374–76 (11th Cir. 2008); *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424–25 (11th Cir. 2010).[1] Courts may review facts outside the pleadings provided the parties sufficiently develop a record through exhibits to the motion and response. *Bryant*, 530 F.3d at 1376; *Tillery*, 402 F. App'x at 424.

## DISCUSSION

The EEOC denied Plaintiff's charge of discrimination on the ground that it was untimely. Defendant raises time-related issues of exhaustion of administrative remedies, statutes of limitations, and equitable tolling. Drawing all reasonable inferences in the light most favorable to Plaintiff, the Court sets forth the pertinent dates as supported by Plaintiff's allegations and submissions.

**<u>Timeline</u>**

---

[1] *See also Bennett v. McDonough*, 8:21-cv-2018-SDM-AEP, 2023 WL 204828, at *1 (M.D. Fla. Jan. 17, 2023) (citing same); *Santiago v. Kijakazi*, No. 8:21-cv-2175-WFJ-MRM, 2022 WL 17345073, at *1 (M.D. Fla. Nov. 14, 2022) (citing same), *adopted by*, 2022 WL 17338812 (M.D. Fla. Nov. 30, 2022); *Penson-Johnson v. U.F. Health Shands Hosp.*, No. 1:24-cv-176-AW-MAF, 2025 WL 1524493, at *2 (N.D. Fla. Feb. 27, 2025) (citing same).

The first alleged discriminatory conduct occurred on October 16, 2022, when Ms. Sims was subjected to unwanted touching by a store manager. She reported the incident to HR, and Ms. Sims alleges the HR representative responded by asking Plaintiff what she wanted HR to do about it. Plaintiff then reported the inappropriate comment to the HR hotline.

Ms. Sims was required to continue working with the store manager, and she became ill and unable to complete a work shift with the harasser present. On October 26, Plaintiff reported back to the HR representative, who suggested Plaintiff take a leave of absence. Plaintiff was placed on a two-week leave of absence which ended on November 15. At this time, Plaintiff did not know she was pregnant.

Ms. Sims was diagnosed in early March 2023 with hyperemesis gravidarum, a condition associated with pregnancy. Her physician recommended she take leave from March 16 through August 20, 2023, and FMLA paperwork was submitted to Target. Plaintiff's leave was denied, and on April 3, 2023, Plaintiff was terminated.

Plaintiff initiated an EEOC inquiry or charge of discrimination on August 4, 2025. Without a response from the EEOC, Plaintiff filed this now removed employment discrimination and retaliation action in state court on August 11,

2025.  On September 9, the EEOC informed Plaintiff that her charge was untimely, and Plaintiff requested a Notice of Right to Sue.

**FCRA, Title VII, and ADA: exhaustion of remedies and equitable tolling**

The FCRA contains the Pregnancy Discrimination Act, which makes it unlawful for an employer to discriminate against any individual because of pregnancy.  Fla. Stat. § 760.10(2).  Before filing a civil action under the FCRA, the plaintiff must first exhaust her administrative remedies by filing a complaint or charge with the Florida Commission on Human Relations or the federal Equal Employment Opportunity Commission ("EEOC").  Fla. Stat. §§ 760.03, 760.07, 760.11(1); *Harris v. Public Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302–03 (11th Cir. 2023); *Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1325, 1330 (M.D. Fla. 2013) (dismissing counts for failure to exhaust administrative remedies under FCRA).[2]  The complaint or charge must be filed with either of these agencies "within 365 days of the alleged violation."  Fla. Stat. § 760.11(1); *see Rainey v. United Parcel Serv., Inc.*, 816 F. App'x 397, 401 (11th Cir. 2020) (citing

---

[2] "Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge."  *Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (citing *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)); *Hardin v. Oakley Transport, Inc.*, 773 F. Supp. 3d 1320, 1337 (M.D. Fla. 2025) (quoting *Rizo*).

*Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002)).[3]

Title VII also requires that a plaintiff must first exhaust her administrative remedies. *Harris*, 82 F.4th at 1302–03 (citing 42 U.S.C. § 2000e-5(e)). Under the Pregnancy Discrimination Act of Title VII, 42 U.S.C. § 2000e(k), a charge of discrimination must be filed with the EEOC within 300 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. 1626.7(a); *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (recognizing Florida as a deferral state and noting "only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable").[4]

Lastly, the exhaustion requirement applies to retaliation claims under the ADA. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (citing *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001)). The same charge deadline for Title VII claims (300 days) applies to ADA claims.

---

[3] Only after the Florida commission makes a determination on the discriminatory and retaliatory actions may the plaintiff bring a civil action in court. Fla. Stat. § 760.11 (4); *Saunders v. City of Lakeland, Fla.*, No. 8:22-cv-2482-MSS-JSS, 2023 WL 12175885, at *5 (M.D. Fla. Sept. 13, 2023) (dismissing FCRA claim for failure to exhaust administrative remedies).

[4] In a deferral state, such as Florida, the written charge of discrimination must be filed with the EEOC within 300 days of the occurrence of the alleged violation. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101 (11th Cir. 1996); *Hardin v. Oakley Transport, Inc.*, 773 F. Supp. 3d 1320, 1337 (M.D. Fla. 2025) (citing *Grayson*).

*Maynard*, 256 F.3d at 1262 (11th Cir. 2001) (citing *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999)).[5]

To calculate the date the charge must be filed with the agency, the last discriminatory act is the starting point. Here, the last possible discriminatory act or violation occurred on April 3, 2023, the date of termination. *See*, *e.g.*, *Alford v. Pasco-Pinellas Hillsborough Cmty. Health Sys.*, No. 8:25-cv-94-VMC-SPF, 2025 WL 3275946, at *7 (M.D. Fla. Nov. 25, 2025) (finding latest violation occurred when employment ended and dismissing complaint with prejudice for failure to exhaust administrative remedies). Applying the 300-day limit to the Title VII and ADA claims, the charge was due to be filed no later than January 28, 2024. Under the FCRA's 365-day limit, the charge was due no later than April 2, 2024. Thus, her charge filed on August 4, 2025, was 554 days (approximately 18 months) too late under Title VII and the ADA, and 489 days (approximately 16 months) too late under the FCRA.

Although a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the agency, the timely filing of a charge is not a jurisdictional prerequisite and is subject to equitable tolling. *Zipes v. Trans*

---

[5] *See also EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002); *Cooper v. Cmty. Haven for Adults & Children with Disabilities*, No. 8:12-cv-1041-VMC-EAJ, 2013 WL 24240, at *6 (M.D. Fla. Jan. 2, 2013) (citing *Zillyette*)

11

*World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Christian v. Southern Co.*, No. 24-10762, 2025 WL 66722, at *3 (11th Cir. Jan. 10, 2025) (citing *Zipes*). The party seeking equitable tolling must prove that she has been pursuing her rights "diligently" and that some "extraordinary circumstance" stood in her way and prevented timely filing. *Menominee Indian Tribe of Wisconsin v. U.S.*, 577 U.S. 250, 255 (2016) (quotation omitted). Equitable tolling is an extraordinary remedy to be extended only "sparingly." *Justice v. U.S.*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citing *Irwin v. Veterans Administration*, 498 U.S. 89, 96 (1990)).

First, Ms. Sims generally characterizes her reasons for not filing earlier as "extraordinary circumstances." Dkt. 30 ¶ 3. She argues that although she was notified of her termination on April 3, 2023, Target "failed to properly classify her separation for over three months." Dkt. 30 ¶ 2. She claims that Target "did not record her separation until July 17, 2023," when it incorrectly coded her separation as a "voluntary quit." *Id.* Plaintiff asserts this "misrepresentation" caused "confusion, distress, and delay." *Id.* These statements, however, do not explain how the classification of her separation altered the fact that she was terminated on April 3.

Any discrepancies or issues concerning how the termination was "coded" in paperwork do not give rise to a misrepresentation upon which Ms. Sims relied. The facts do not show that Target intentionally misled her and caused her to delay

12

filing a charge of discrimination. *See Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007) (holding that a court clerk's statements must be more than misleading and require some affirmative misconduct or deliberate concealment). As noted by Defendant, Ms. Sims does not allege that she filed in the wrong forum, that Target concealed material facts, or that Target or the EEOC misled her. Dkt. 28 at 3; *see Jackson*, 506 F.3d at 1355 (listing "fraud, misinformation, or deliberate concealment" as reasons for extraordinary circumstances under traditional equitable tolling principles). Ms. Sims' assertions do not constitute extraordinary circumstances but fall under the category of a failure to exercise due diligence. *See Irwin*, 498 U.S. at 96.[6]

There are no submissions or allegations that Plaintiff failed to realize she was terminated as of April 3, 2023. Ms. Sims even acknowledges that prior to August 4, 2025, she "was unaware of [her] rights and the 300-day deadline." Dkt. 13 at 8. It was not until August 4 that she learned her filing was late, as evidenced by her request for equitable tolling to the EEOC. *Id.* ¶¶ 12, 15 & at 7–8. These actions do not give rise to equitable tolling because it is well established that

---

[6] The Supreme Court wrote:
> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.*

*Irwin*, at 96 (emphasis added).

13

ignorance of the law does not typically present extraordinary circumstances. *See Jackson*, 506 F.3d at 1356.

Ms. Sims further defends her delay by asserting that she did not become "medically, emotionally, and logistically stable" to file a charge with the EEOC until August 4, 2025. Dkt. 30 ¶ 3. Plaintiff attributes the delay to "trauma, illness, misinformation, and caregiving burdens" beyond her control. *Id.* As diagnoses "throughout and after her pregnancy," she lists hyperemesis gravidarum, postpartum depression, and anxiety disorder. *Id.* Plaintiff also adds that she was "emotionally traumatized" during her pregnancy. Dkt. 13 at 8. She asserts that her symptoms of severe postpartum depression persisted for a year after she was terminated in April 2023. Dkt. 23 at 4–5. This statement, however, does not establish why she waited until far longer than 300 or 365 days to file a charge with an agency.

The Court finds that Plaintiff's medical conditions and diagnoses, as presented, do not invoke equitable tolling. *See Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) (holding that plaintiff failed to establish a causal connection between schizophrenia and late filing). It is Plaintiff's burden to show that the extraordinary circumstances were "both beyond [her] control and unavoidable even with diligence." *Id.* at 1342. Reliance on childcare responsibilities and her mental and emotional status, without a causal connection

between her medical conditions and late filing, falls short of demonstrating extraordinary circumstances to warrant equitable tolling. *See*, *e.g.*, *Watson v. Children's Healthcare of Atlanta*, No. 1:24-cv-514-SEG-JEM, 2024 WL 6473771, at *5 (N.D. Ga. Nov. 22, 2024) (collecting cases). Plaintiff has failed to show that she was unable to care for her two children and herself, despite depression and anxiety, and even if so, she has not shown that her medical conditions prevented her from filing a charge long before she did.

Because Plaintiff cannot now file a timely charge with the EEOC or Florida commission within 300 days for her Title VII and the ADA claims, or 365 days for the FCRA claims, any further amendment of the complaint would be futile. *See Alford*, 2025 WL 3275946, at *7 (dismissing with prejudice Title VII and FCRA claims for failure to exhaust and citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *Williams v. City of Daytona Bch.*, No. 6:24-cv-1672-JSS-NWH, 2025 WL 2230053, at *3–4 (M.D. Fla. Aug. 5, 2025) (dismissing with prejudice Title VII claims for failure to exhaust). Accordingly, Plaintiff's claims brought under the FCRA, Title VII, and the ADA are dismissed with prejudice.

**FMLA: statute of limitations**

Generally, "a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 812 (2024) (quoting *CTS Corp. v.*

15

*Waldburger*, 573 U.S. 1, 7–8 (2014)).  The FMLA's statute of limitations ends "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617 (c)(1); *see Liu v. Univ. of Miami Sch. of Med.*, 693 F. App'x 793, 799 (11th Cir. 2017) ("FMLA actions generally have a tow-year statute of limitations[.]").  If the defendant's violations are willful, the limitations period is extended to three years.  29 U.S.C. § 2617 (d)(2); *Liu*, 693 F. App'x at 799 (noting the action must be brought within three years if "a plaintiff establishes that a defendant's violation was willful"); *Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1298–99 (S.D. Fla. 2021) (differentiating between FMLA two and three-year statute of limitations).  To establish willfulness, the plaintiff must show that the employer either knew its conduct was prohibited by the FMLA or showed reckless disregard for the matter. *See Smith v. St. Joseph's/Candler Health Sys., Inc.*, 770 F. App'x 523, 526 (11th Cir. 2019) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)).

    For statute-of-limitations purposes, the "last event constituting the alleged [FMLA] violation" occurred when Plaintiff was terminated.  *Rodda*, 542 F. Supp. 3d at 1298–99 (finding plaintiff's layoff as the last event).  Thus, the statute of limitations began to run in April 2023.

    Plaintiff has had two attempts to allege violations of the FLMA, one in her initial complaint and the second in this Amended Complaint.  Plaintiff does not

16

contest that her claims fall outside the two-year statute of limitations under the FMLA, as this lawsuit was filed more than two years after her termination. Even though this lawsuit was filed within three years of her termination, she neither asserts nor suggests any fact or indication that an alleged FLMA violation was willful, thereby triggering the three-year statute of limitations. She argues for only equitable tolling. Dkt. 23 at 2.

For the same reasons that equitable tolling did not apply to the time limit for bringing a charge with an agency, as discussed above, equitable tolling does not apply to extend the two-year statute of limitations, which ran two years from her termination. Thus, Plaintiff's claim brought under the FMLA is time-barred as is apparent from the face of the Amended Complaint.

**Florida's private Whistle-blower Act: statute of limitations**

Florida's private sector Whistle-blower Act forbids an employer from taking any retaliatory personnel action "because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat., § 448.102(3). A two-year statute of limitations governs. Fla. Stat. § 448.103(1)(a); *Hill v. Florida POP, LLC*, No. 8:20-cv-1142-WFJ-AAS, 2020 WL 6564847, at *2 (M.D. Fla. Nov. 9, 2022) (dismissing FWA claim with prejudice because plaintiff knew the date of her injury—attending a meeting with manager that caused her termination—which

17

occurred more than two years before she filed action). A retaliation claim under the FWA arising from termination accrues on the date of termination. *Robinson v. HCA Healthcare Servs. Fla., Inc.*, No. 8:24-cv-275-TPB-AEP, 2024 WL 4556132, at *5 (M.D. Fla. Oct. 23, 2024) (collecting cases).

Here, Ms. Sims alleges she was terminated on April 3, 2023. Dkt. 13 ¶ 9. She did not file this action in state court until August 11, 2025, which is two years and approximately four months later. Thus, the statute of limitations expired two years later, on April 3, 2025. Because any amendment would be futile, the FWA claim is dismissed with prejudice. *See Sanders v. Temenos USA, Inc.*, No. 16-cv-63040, 2017 WL 3336719, at *4 (S.D. Fla. Aug. 4, 2017) (dismissing with prejudice FWA retaliation claim filed more than two years post-termination as amendment would be futile); *Bracamonte v. Parsons Transp. Grp., Inc.*, No. 11-24410-Civ, 2012 WL 13014691, at *3 (S.D. Fla. July 25, 2012) (same).

As with the FLMA claim, Plaintiff does not dispute that her FWA retaliation claim was filed after the statute of limitations ran. She argues only for equitable tolling. Plaintiff's grounds for equitable tolling are without merit as discussed at length above.

**Negligence regarding violations of internal Target policies**

Referring to October 2022 incident with Plaintiff's team leader, the Amended Complaint asserts that Target failed to enforce its zero-tolerance

18

harassment policy and retained the alleged harasser. Florida, however, does not recognize a private cause of action for an employer's alleged failure to comply with its own internal policies, unless the failure is tied to a statutory or contractual obligation. *See Muller v. Stromberg Carlson Corp.*, 427 So. 2d 266 (Fla. 2d DCA 1983). Plaintiff fails to set forth any legal theory to support an independent cause of action. Nor does she offer any response concerning this claim.

## CONCLUSION

Based on the foregoing reasoning, Defendant's motion to dismiss (Dkt. 20) is granted. Plaintiff's motion for equitable tolling (Dkt. 30) is denied. The ADA, Title VII, and FCRA claims are dismissed with prejudice for failure to exhaust administrative remedies. The FMLA and FWA claims are dismissed with prejudice as time-barred. The claim for violations of Defendant's internal policies is dismissed consistent with this order. Repleading any of Plaintiff's claims would be futile. The Clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on January 15, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Plaintiff, *pro se*
Counsel of Record